We'll hear argument now in No. 19-55053, Martin Luther King, Jr. Community Hospital v. Community Insurance Company. We'll hear first from Mr. Chan. You may proceed. Your Honor, I was expecting to go second as the affilee. Do you want me to go first? Oh, I'm sorry. I misread the chart here. I'm sorry, Ms. Ridley. I'm sorry. Quite all right. Good morning and thank you. Eileen Ridley, Foley & Lardner on behalf of the appellants and defendants. Your Honors, I request to reserve five minutes in rebuttal, if I may. You may proceed. Thank you. May it please the Court? Your Honor, this case raises the question of what constitutes an ERISA plan. We contend that the lower court's ruling was in error, largely in part because while it simultaneously argued that the benefit booklet was not part of the plan documents, it then relied on selective portions of that benefit booklet to rule in favor of the plaintiff. It is our contention that that was incorrect. It was incorrect in the context of the district court should have recognized the benefit booklet as part of the ERISA plan along with the SPD, but while recognizing it and understanding there were benefits to be provided, it must also give force to the entire agreement, including the anti-assignment provision that is found within that agreement, which, given applicability, indicates that the assignment relied on by MLK was ineffective. Was the anti-assignment provision in the contract between Anthem and Budco? It was in the benefits booklet. If you mean the contract between Anthem and Budco, if you mean the ASA, it was not in that document. Okay, so it's only in the benefit booklet? That is correct, Your Honor. Why wouldn't we read anyone else in the anti-assignment language not to refer to the preceding persons who are enumerated in the sentences that precede that? If we assume it's part of the plan, why would it be applicable here? It would be applicable because it states that you cannot assign your right to receive payment to anyone else, except as required by the qualified medical child support. The anyone else means individuals other than the member. It is not the provider here. So, the anyone else is suggesting that the assignment cannot be somebody other than the member itself. Why would it refer back to the word provider in the first sentence? Your brief goes through the semantic gyrations, I call them, about trying to avoid the term anyone else referring to provider. I don't understand any legal significance to your argument other than you're trying to ignore the fact that the word provider is in the first sentence. Your Honor, in the first sentence it says, you authorize the plan to make payments directly to providers for covered services. The you there is the member. And so, while the provision allows the member to have the payment directed to the provider, it does not indicate that assignment of rights can be assigned by the member to the provider. That's a greater issue than the direction of payment. And so, when it says anyone else, it is not related to the provider itself. The sentence right before it says, any payments made by the plan will discharge the plan obligation to pay for covered services. So, there's not an assumption that there would be an assignment by way of just allowing for the direction of payment within that language. Getting back to a related question, the district judge decided to only incorporate certain parts of the benefits booklet as part of the plan. Do you agree if the district judge had not been willing to do that, the plan would have been at risk of being just completely abolished and the members would not have any benefits? Thank you, Your Honor. I'm sorry, your feed is a little choppy. I think what you've just asked me is, if the district judge did not incorporate portions of the benefit booklet, whether or not the plan would be in danger of not meeting, essentially, obligations under ERISA. Yeah, it would be invalid. Okay. I think, yes. I mean, if you were just looking at the SPD, I don't think there's any dispute by any of the parties or, for that matter, the lower court, that the SPD alone doesn't provide for benefits. And, of course, under ERISA, a plan must have the provision for benefits, which is why it is the case that the district court needed to go back to that benefit booklet in order to make its ruling. But in doing so, what it is doing is essentially recognizing that that benefit booklet is part and parcel of the plan itself, i.e., is part of the ERISA plan. And when you look at cases such as Horn and Gonzalez, it's understood that an ERISA plan can be more than one document. It doesn't have to specifically reference the documents. It's for the purposes of ensuring that there's an operation and benefits to be provided. So, yes, the district court, in order to award any sort of damage to the plaintiff here, had to recognize the benefit booklet as a portion of the plan. Okay. So, the district court, you can sort of pre-pick what he thought it would be. But on the anti-assignment clause, that's not a benefit. That's a restriction on the use of benefits. So, how can we conclude that whatever the district judge did, he had to include the anti-assignment clause as well, when that's not a benefit? Because, Your Honor, because he, for several reasons. One is, in doing so, he had to rely on the benefit booklet itself. And in taking that portion of the document, the entire document was to be considered, not just selective portions. Moreover, the anti-assignment provision itself is in a section referred to as payment of benefits. And in looking at the documents, the SBD states that its certificates will talk about the terms and conditions with regard to the payment of benefits. And as a consequence, that provision is vital to the aspect of how the benefits would be, in fact, provided and paid under the ERISA plan. I'm sorry. Doesn't incorporating the entirety of the booklet into the plan, doesn't that seem to assign the administrator a role that's inconsistent with the Supreme Court Cigna decision and the division of authority it recognizes? It does not, Your Honor. In Cigna, you had a completely different situation. You had actually a sponsor and an administrator being the same entity, and they were trying to change language. That's not what we have here. We have a separate administrator that crafted the documents, which is completely normal and within the market the language is not unfamiliar. And there's no change of the language. You have the administrator writing the terms of the plan, and they're not to be found in any other document. That's kind of not what Cigna envisions. Well, but I would argue, Your Honor, that in fact Cigna recognizes that an administrator can, in fact, draft the terms of the plan. The SBD also incorporates and assumes that that will be the case. That's not unusual by any means. But what Cigna had an issue with was with regard to that plan having been established and then attempts to unilaterally change it, which is not what we have in this case, Your Honor. Excuse me. This is Judge Schroeder. Am I correct that where the hospital went wrong here then was requiring the patients to make an assignment of their benefits? Well, where the hospital went wrong, Your Honor, is assuming that those assignments were effective so that they didn't even involve the patients in trying to recover the amounts that had already been paid under the plan to the members. Where the hospital went wrong is that it didn't seek its payment from the members, which had been received from the insurer and the plan. Well, can we consider what the district court referred to, that Anthem's motivation here to have the assignment clause included was to further their policy of not giving benefits as great to out-of-network hospitals such as MLK was, such as the plan was? No, Your Honor. I would say that the issue with regard to the position on two assignments is really as a matter of control, ensuring that the payment of the benefit of the plan is actually going to the member who is in contract with the plan, as opposed to having assignments to third parties who have no relationship to the plan, no contract or agreement with either the plan or the administrator. That is a fact in the records. Anthem has a different policy as to out-of-network and in-network providers. Anthem has a policy that assignments would not be recognized with regard to out-of-network providers, in part because of the fact that they want to ensure that the benefits are going to the members who are the ones who contracted for the coverage. Let me ask you another question about the certificates of coverage. This is a phrase that is used in eight different times in the first page of the plan,  Now, I'm aware there's some deposition testimony and a declaration that it was intended to mean the same as benefits booklet, or benefits booklet took the place of certificates of coverage. But why wasn't the documentation here more clear? And don't we have to consider that, frankly, it seemed a little sloppy, that this term, certificates of coverage, is used in the plan, and then there's no such document. And did that give the district judge some discretion to devise a plan to satisfy ERISA, using equitable principles? Your Honor, no. Could the language be better? Yes, the language could be better. But, in fact, the language that is present is sufficient to understand that the benefit booklet is part of the plan, because the SBD itself defines certificate of coverage as including plan booklets. And then you have the plan benefit booklet. It is absolutely tenable and understandable, clear, that the SBD anticipated and expected a booklet to be existing, and, in fact, that is the case. And we would contend, Your Honor, that given that, it was inappropriate for the lower court to fashion its own contract. That actually is counter to what is expected within analysis of ERISA plans. The court is not to fashion its own plan. Well, the mole and mole case, that happened, the only difference there was it was an entire document rather than just a portion of the document. Isn't that correct? That's exactly right. And in this case, essentially the court's ruling implicitly acknowledged that the benefit booklet was part of the ERISA plan. And in so doing, it was obligated under cases such as mole and horn and Richardson to adopt the entire document, including the anti-assignment provision. Counsel, I see you wanted to save some time for rebuttal. So I'll actually, we used up questions at the end. I'll give you two minutes for rebuttal when you return. Thank you, Your Honor. And now we'll hear from Mr. Chan. It pleased the court. The reason to uphold the judgment in favor of Martin Luther King, Jr. Community Hospital is very simple. MLK provided over $1 million worth of uncompensated emergency care over a period of three years to participants and beneficiaries of Budco's health plan that was administered by Anthem. They were never paid a single cent. This dispute began in 2015, so it's going on five years now. All of the patients involved, except for one, and that one was one where the court did not grant summary judgment in our favor, had assignments of benefits that they assigned their benefits to the hospital. And the reason that... Can we look at this key sentence in the plan? What everyone agrees is a plan document where it says, the certificates of coverage for your elected benefit options are plan booklets provided by the insurance company that provide contract administration services for the plan. How can that be construed as referring to anything other than these booklets? It uses the word booklet provided by the insurance company. These are booklets provided by the insurance company. Why isn't this the certificate of coverage then? Your Honor, we think that there are several ways to reach the result that the district court reached. We think that he reached the right conclusion, and the way he did it is he didn't think that Anthem met its burden to show that these booklets were just certificates of coverage. I think that we wouldn't, even if they are, and even if... What else would that refer to? What other plan booklets? It uses that term. What else is that a reference to? Your Honor, I'm not aware of any other booklets in the record, but honestly, as I think has been discussed, the benefit booklet doesn't say it's a certificate of coverage. It doesn't say it's a plan document. Well, it doesn't say it's a certificate of coverage, but it does say it's a booklet, and the plan defines the certificate of coverage as a booklet from the insurance company that describes the benefits. I don't see why this is ambiguous. Your Honor, the point is well taken, and we will point out the following, that one other way to look at this document, this plan document, is that on the first page that you're looking at, at the bottom, the very last paragraph says benefits described in this document are effective January 1, 2015. It also says that to the extent there's a conflict between the terms of this SPD and the certificates of coverage, that this SPD shall control except where it says that certificates will control. So, even if you accept the premise that the benefit booklet is the plan booklet, then only certain portions are incorporated. The whole document is not incorporated, and this really goes to the intent of the plan sponsor, who's Budco, not Anthem. Budco, in the following year, in 2015, we have an SPD. In 2016, we have an amendment that solely changes one definition, the definition of a spouse. But that says the only plan document is the SPD, and so we think this is a case like Pritchard, like Mull, where the sponsor's intent was very clear, that this be the governing document, and perhaps parts of the benefit booklet are incorporated, but not the whole booklet. Your Honor, I want to jump ahead to the booklet itself. This is a very technical issue, but the clause at issue, the assignment clause, is pretty clear. It says very straightforwardly that you authorize the plan to make payments directly to providers for covered services, and as we've discussed only a few sentences later, it says you may not assign your right to receive payments to anyone else. So, the important thing to understand here, there's two things. First is that the default under ERISA is assignability of benefits. Only if there's a clear and unambiguous anti-assignment clause, where the intent of the plan sponsor was very clear not to allow assignment to providers. The Mystic case, which this Court decided in 1989, says that as long as the right to payment of the benefits for the covered health services is assigned to the provider, then the provider has the right to sue under ERISA. And since this Court decided that case, it's been adopted by every other circuit in the country. And so, if there's a tie here, if there's any ambiguity that can't be resolved, that tie has to go to MLK. That's the first point. The second point is that the standard of review here is de novo. Anthem does not dispute this. They've conceded the point. They don't address it in either their opening brief or their reply brief. And so, literally, the question before the Court is to, assuming that this is part of the plan, is to look at the actual language of that assignment clause and to say, does this clearly prohibit assignment? And if not, then assignment should be allowed. If we look at that clause, I mean, the last sentence, under your reading where anyone else means anyone other than the persons referred to in the prior, I guess it's three sentences, wouldn't that render superfluous the accept clause in the final sentence because it repeats someone who's already mentioned in the prior sentences? Right, the recipient of a QM-CSO, a child support order, in essence. I would say that it doesn't. I think you have to read the first two sentences and then the fourth sentence together. I would also say that, just to give you a sense, a child support order is not an assignment by a person covered by the plan of his benefits. It's an order by the Court to say, well, you should cover the health care for one or more dependents. So, it's not even an assignment that is freely made in the sense that an assignment is made by a patient to a provider. So, there are lots of problems with that clause. But clearly, whatever it does, the one thing it doesn't do is prohibit assignment to providers. In fact, it explicitly contemplates that the assignment of payment to providers is allowed and authorized by the beneficiaries and participants of the plan. And again, Your Honor, because we are looking at this de novo and because the default is assignability under ERISA, any tie or any ambiguity has to go to MLK. I do want to address a few of the points that were made here. We think that what the district court judge did is justifiable in incorporating just the benefits. I do agree with the district court that the requirement that there be a basis on which the payments to and from the plan must be set forth in the governing plan document. That is supplied by the benefit booklet, and it was proper to incorporate just those benefits. That's consistent with the approach that the SPD takes by describing the benefits as being described in this document and therefore explicitly incorporated into the plan. I also want to point out, Your Honors, that Anthem contends that what we should have done is to work with the patients. Well, we were getting calls from the patients with Anthem on the line saying, why haven't you built the claim? At some point, MLK actually stopped billing the claims because they didn't want the patients to get the checks.  Really, coming to the court in the way that we have is the primary relief that is available to us. One more point I would also like to make is on the intent here. We think that the most important lesson, if there is a lesson from Moll, and the court's equitable powers to refashion a plan in a way that makes sense and creates a whole plan, is that it must be the intent of Budco, the plan sponsor who has written the plan documents, and not the intent of the administrator who's Anthem. Unless Your Honors have any further questions, I would submit. If I may, I have just a few points. With regard to the issue of the interpretation of the anti-assignment provision, I will note that there are several decisions, you know, the Duhl decision, the Griffin decision, and the Engstadt decision, all of which indicate that this language is not in any way ambiguous and does affect an anti-assignment language with regard to providers. And so any concerns with regard to the language actually has been resolved by those cases. With regard to the question about whether or not... If we were to conclude it was ambiguous, would the tie, so to speak, go against you? I don't think so. First of all, neither MLK nor the lower court ever determined there was any sort of ambiguity. If this court were to determine that, that would become a question of fact, quite frankly. That should be certainly addressed at the trial court level, but certainly not the result of a decision with regard to a motion for summary judgment, Your Honor. With regard to the issue about the anti-assignment provision being argued as not being part of payment, I'd go back again to the SBD, which everybody acknowledges is part of the plan. And the SBD specifically says that the plan booklets, quote, describe the health care or other welfare benefits and the terms and conditions for receiving those benefits, which are offered to employees of the company and their families by the plan. And so the plan document perceives not only the benefits, but also the manner in which and the terms and conditions for receiving those benefits, which specifically then references the anti-assignment provision under a section literally entitled Payment for Benefits. It is therefore our position that, in fact, both the benefit booklet and the SBD is the ERISA plan, and under affecting the language for the entire plan, the anti-assignment provision should be given effect and the ruling below reversed. All right. Thank you, counsel. I appreciate counsel's arguments under these unusual circumstances. And the case just argued will be submitted. Thank you. Thank you, Your Honors. Thank you, Your Honors. This court for this session stands adjourned.
judges: Schroeder, Baylson, Collins